# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LYNN K. CHRISTIAN** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 13-4144** |
| **v.** | : | |
| | : | |
| **HONEYWELL RETIREMENT** | : | |
| **BENEFIT PLAN** | : | |
| *Defendant* | : | |

**FILED**

APR 2 4 2014

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

NITZA I. QUIÑONES ALEJANDRO, J.                                       APRIL 24, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion for attorneys' fees* filed by Honeywell Retirement Benefit Plan ("Honeywell") [ECF 13] pursuant to Federal Rule of Civil Procedure (Rule) 54(d)(2) and the Employee Retirement Income Security Act, 29 U.S.C. §1132(g)(1) ("ERISA"), following the dismissal of Lynn K. Christian's ("Christian") declaratory judgment action as time-barred. Christian filed a response opposing Honeywell's motion, [ECF 19], and Honeywell filed a reply thereto. [ECF 20]. This motion for attorney's fees is ripe for disposition.

For the reasons stated herein, Honeywell's motion is granted.[1]

---

[1] Although Honeywell requested oral argument on the motion, the request was denied since oral argument was not deemed necessary and the hourly rates are not in dispute. *See Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 265 n. 5 (3d Cir. 2002) (If "hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates.").

## BACKGROUND

This memorandum opinion incorporates by reference this Court's Memorandum Opinion dated December 19, 2013. [ECF 11]. The following factual summary provides context to Honeywell's motion for attorneys' fees:

> Lynn and Howard F. Christian were married at the time of his retirement from Honeywell International Inc., or an affiliated company, on December 31, 1986, as well as at the time of his death. During his employment with Honeywell, Mr. Christian had been a participant in the company's employment pension benefit plan ("Plan") and had listed his wife as the joint annuitant/beneficiary in the *Application for Benefits* and the primary beneficiary in the *Application for Continuance of Honeywell Group Medical and Life Insurance Coverage*.

> Upon retirement, the couple moved to Florida and Mr. Christian began receiving monthly retirement benefits from Defendant starting January 1987, which were deposited directly into a bank account in Florida. Unbeknownst to his wife, Mr. Christian's retirement benefit was paid in the form of a *single* life annuity with level income with Social Security starting at age 65 pursuant to a signed "*Waiver of Joint and Surviving Spouse Annuity*" ("Waiver") form.[2] This Waiver purportedly was signed by Mrs. Christian (a fact she denies) and notarized on December 1, 1986, in Pennsylvania, by Mr. Christian's then long-time secretary. Mr. Christian died on June 26, 2004.

> On July 2, 2004, Christian contacted the Plan's administrator to report her husband's death and to inquire about any survivor's benefits and life insurance. Following numerous conversations with the Plan's representative, Christian was advised that her husband's retirement benefits ceased upon his death, and that no future payments would be made. She was also advised that Defendant would seek reimbursement of benefit payment erroneously issued for the month of July 2004.

> Eight years later, in June 2012, Christian discovered a copy of the signed Waiver among her late husband's papers and became aware, for the first time, of the existence of the Waiver and her consent to waive the right to a joint and survivor annuity. Christian asserts that in the absence of her expressed consent, her husband's retirement benefit should have continued payable as a joint and survivor annuity. She claims that the Plan's representative never advised her of the existence of the signed Waiver.

> In July 2012, Christian submitted a claim for joint and survivor annuity, pursuant to the Plan's claims procedures. The claim was denied on October 18, 2012, and on November 7, 2012, Christian administratively appealed the decision.

---

[2] The *single* life annuity option under the Plan provides a greater amount of monthly benefits than the *joint and survivor* option since the annuity or monthly benefit is for the life of the participant only.

On January 22, 2013, the decision was affirmed. The denial letter explicitly indicated that Christian had "failed to bring [her] claim and appeal during the applicable statute of limitations," and that the Plan Appeals Committee "could not understand why [Christian] accepted increased Plan payments for the 17 years [her] husband was alive and then waited so many years after payments ended before pursuing a claim and appeal with the Plan." The decision was also predicated on the possibility that Christian and her husband returned to Pennsylvania on December 1, 1986, to complete the retirement paperwork and that any claim Christian had would have been against the notary public and not the Plan.[3]

Procedurally:

On July 17, 2013, Christian filed this declaratory judgment action against Honeywell pursuant to ERISA, 29 U.S.C. §1132(a)(1)(B),[4] seeking survivor retirement benefits under the Plan of her late husband. By Memorandum Opinion and Order dated December 19, 2013, this Court granted Defendant's *motion to dismiss* the complaint pursuant to Federal Rule 12(b)(6) finding the matter time-barred.[5]

On January 6, 2014, Honeywell filed a timely motion for attorneys' fees.[6]

On January 10, 2014, Christian appealed the December 19, 2013, decision.

## LEGAL STANDARD OF REVIEW

Ordinarily in a lawsuit, each party bears its own expenses and attorney's fees unless there is expressed statutory authorization to the contrary. *See Fox v. Vice*, 563 U.S. __ , 131 S. Ct. 2205, 2213 (2011); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 267-68

---

[3] January 22, 2013, Letter from Honeywell Confirming Denial of Christian's Internal Appeal. Mot., Ex. 1 [ECF 13-8].

[4] A civil action may be brought by a participant or beneficiary to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. §1132(a)(1)(B).

[5] Said Memorandum Opinion and Order were docketed on December 20, 2013.

[6] Honeywell had until Friday, January 3, 2014, to file a motion for attorneys' fees under Rule 54(d)(2)(B)(i). That day, the court was closed due to inclement weather, making Monday, January 6, 2014, the next appropriate deadline.

(1975). Title 29, §1132(g)(1) provides such a fee shifting provision;[7] *to wit*: "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," *National Sec. Systems, Inc. v. Iola*, 700 F.3d 65, 103 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 1812 (U.S. 2013); *Glunt v. Life Ins. of N. Am.*, 2012 WL 895512, at *1 (E.D. Pa. Mar. 16, 2012), as long as the fee claimant has achieved "some degree of success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983); *National Sec. Systems, Inc.*, 700 F.3d at 103 (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010) (citation omitted)).

The degree of success on the merits standard requires more than "trivial success on the merits" or a "purely procedural victory." *Hardt*, 560 U.S. at 255. A court's assessment of the merits of a motion for attorneys' fees, therefore, requires a three-step process. *Viera v. Life Ins. Co. of North America*, 2013 WL 3199091, at *2 (E.D. Pa. June 25, 2013) (slip copy) (citing *Hardt*, 560 U.S. at 249). That is, (1) a court must determine whether the claimant is a "'prevailing party'", *Hardt*, 560 U.S. at 249; (2) if that threshold determination is made, the court must then determine whether an award of attorneys' fees is appropriate by examining five specific factors which in this circuit are known as the "*Ursic* Factors", *id.*; *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983); and (3) if the *Ursic* factors suggest that awarding attorneys' fees is appropriate, then a court should "review the attorney's fees and costs requested and limit them to a reasonable amount." *Viera*, 2013 WL 3199091, at *2 (citing *Hardt*, 560 U.S. at 249); *see also American Bd. of Internal Medicine v. Von Muller*, 540 Fed. Appx. 103, 107 (3d Cir. 2013).

---

[7] *See Drazin v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, 528 Fed. Appx. 211, 214 (3d Cir. 2013) ("Because [this] action was brought primarily under ERISA, the District Court correctly concluded that this is a fee-shifting case.").

4

**DISCUSSION**

As to the threshold consideration, Honeywell argues that it is a prevailing party, having met "some degree of success on the merits", and that the *Ursic* factors weigh favorably towards granting its motion for attorneys' fees. Christian rebuts these arguments and contends that the motion should be denied because: (1) Honeywell cannot be said to have achieved success on the merits while her appeal is pending; (2) there is no basis to conclude that she engaged in culpable or bad faith conduct; and (3) none of the *Ursic* factors weigh in favor of awarding attorneys' fees.

### *I. Jurisdiction*

Christian's contention that Honeywell cannot be said to have achieved success on the merits while the appeal is still pending lacks merit. Clearly, a court is not divested of jurisdiction to determine a fee application pending an appeal on the predicate case. *In re Unisys Corp. Retiree Medical Benefits Erisa Litigation*, 2007 WL 4287393, at *1 (E.D. Pa. Dec. 4, 2007) (citing *West v. Keve*, 721 F.2d 91, 95 n. 5 (3d Cir. 1983)). If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion, without prejudice. *Id.* (citing Fed. R. Civ. P. 54(d)(2)(B) 1992 Advisory Committee Note); *McCloud v. City of Sunbury,* 2006 U.S. Dist. LEXIS 9187, at *2 (M.D. Pa. Feb. 23, 2006) (denying the defendant's motion to stay the fee application pending appeal and noting that "[w]e do not recall any instance where we have stayed a motion for attorneys' fees and expenses pending the outcome of an appeal."). A motion for attorneys' fees is collateral to and separate from a decision on the merits, *White v. New Hampshire*, 455 U.S. 445, 449-50 (1982), and does not prevent an otherwise final decision on the merits from becoming final for purposes of appeal.

*Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 199-200 (1988). Thus, this Court may rule on Honeywell's motion for attorneys' fees pending Christian's appeal.

## *II. Success on the Merits*

As to the first step in assessing a motion for attorneys' fees, whether Honeywell has achieved "some degree of success on the merits", the concept is not defined by the Third Circuit; the narrow holding in *Hardt,* however, implies that the "some degree of success on the merits" inquiry depends heavily on the factual circumstances and procedural posture of the matter at hand. *See Zacharkiw v. Prudential Ins. Co. of America*, 2012 WL 551639, at *3 (E.D. Pa. Feb. 21, 2012) (citing *Hardt*, 560 U.S. at 242-43).[8]

---

[8] *See, e.g., Kough v. Teamsters' Local 301 Pension Plan,* 437 Fed. Appx. 483, 490 (7th Cir. 2011) (finding that "[w]hile the remand from the district court here reopened the case based on newly discovered evidence [from the Social Security Administration], the decision to grant Kough benefits was not a 'purely procedural victory.' After the remand, the district judge granted summary judgment for the defendants, and that final decision left Kough with eight months of disability benefits more than he had before the remand. That represents 'some success on the merits' under *Hardt.* "); *Huss v. IBM Med. & Dental Plan,* 418 Fed. Appx. 498, 512 (7th Cir. 2011) ("[E]asily" concluding that "a reversal of the administrative denial of benefits, a remand for further proceedings involving a different controlling document, and the imposition of a statutory penalty against the Defendants" constitutes "some success on the merits."); *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.,* 657 F.3d 496, 506 (7th Cir. 2011) (deciding that "defendants met their initial burden of establishing 'some degree of success on the merits,' as we are affirming the dismissal, although on different grounds, of two of plaintiffs' claims against them."); *McKay v. Reliance Standard Life Ins. Co.,* 428 Fed. Appx. 537, 546–47 (6th Cir. 2011) (observing that "the district court explicitly concluded that McKay's receipt of 'another shot' at his claimed benefits was a 'success on the merits because his case was remanded for further consideration'; in other words, McKay 'achieved some degree of success' by achieving a remand."); *1 Lincoln Financial Co. v. Metropolitan Life Ins. Co.,* 428 Fed. Appx. 394, 396 (5th Cir. 2011) (noting that "MetLife's motion for summary judgment was unopposed by Lincoln and the district court granted summary judgment in favor of MetLife on all of Lincoln's claims. MetLife clearly succeeded on the merits."); *Toussaint v. JJ Weiser, Inc.,* 648 F.3d 108, 110 (2d Cir. 2011) (concluding that "there is no dispute that Defendants achieved both prevailing party status and some degree of success on the merits in this case because the district court granted summary judgment in their favor and we affirmed. Accordingly, the difference between 'prevailing party' and 'some degree of success on the merits' is irrelevant here."); *Williams v. Metropolitan Life Ins. Co.,* 609 F.3d 622, 634–35 (4th Cir. 2010) (having "no difficulty in concluding that Williams did show 'some degree of success on the merits.' In fact, the degree of her success was very high, as shown by the district court's grant of Williams' motion for summary judgment and the district court's holding that Williams was entitled to long-term disability benefits."); *Simonia v. Glendale Nissan/Infiniti Disability Plan,* 608 F.3d 1118, 1121 (9th Cir. 2010) (assuming without deciding that one party's voluntary dismissal of a counterclaim qualifies as "some degree of success on the merits" for the other party).

By granting the motion to dismiss and for the reasons expressed, this Court finds that Honeywell has achieved some degree of success in this matter, in having protected the interest of the members of the Plan and prevailing on the merits of its argument; a success that is beyond "trivial" or a "purely procedural victory". *See Feinstein v. St. Luke's Hosp.*, 2012 U.S. Dist. LEXIS 137025, at *2 (E.D. Pa. Sept. 25, 2012) (describing defendants as "the successful party" after granting their motion to dismiss); *Hardt*, 560 U.S. at 254. As noted, Honeywell has consistently maintained that Christian's claim is time-barred and provided Christian a detailed explanation for denying her claim. When granting Honeywell's motion to dismiss, this Court considered the facts contained in Christian's declaratory judgment action, Pennsylvania's four-year statute of limitations which is applicable to breach of contract actions,[9] the case law on repudiation, and concluded that Christian's ERISA claim filed eight years after the death of her husband was, *indeed,* time-barred. *See* Memorandum Opinion.

While a claimant has the right to challenge any determination made by a plan administrator, such challenges should be based on meritorious grounds. Here, although Christian disputes the authenticity of her signature in the Waiver form, she did so too late. The court action was filed despite knowing that the monthly benefits received while her husband was alive were more than $900 more than what the couple would have received had the Waiver form not been signed. Under the facts and procedural posture of this case, Honeywell is the successful litigant, and the prevailing party. *See also Monkelis v. Mobay Chemical*, 827 F.2d 935, 936 (3d Cir. 1987) (affirming district court's determination on the merits to dismiss plaintiff's ERISA claim as time-barred and to award of attorneys' fees); *Loving v. Pirelli Cable Corporation*, 11 F. Supp. 2d 480 (D. Delaware June 30, 1998) (dismissal for failure to comply with the statute of

---

[9] *See* 42 Pa. C.S. § 5525(a)(8); *Koert v. GE Group Life Assurance Company*, 416 F. Supp. 2d 319, 321 (E.D. Pa. Oct. 20, 2005).

limitations will operate as a judgment on the merits; attorneys' fees awarded to the prevailing defendants).

### III. Ursic Factors

Satisfied that Honeywell has met the "some degree of success on the merits" threshold standard, this Court next considers the *Ursic* factors to determine the merit of Honeywell's motion for attorneys' fees and costs and whether the motion should be granted. Understanding that no single factor is determinative to the motion, the factors are:

(1) the offending parties' culpability or bad faith;
(2) the ability of the offending parties to satisfy an award of attorneys' fees;
(3) the deter[r]ent effect of an award of attorneys' fees against the offending parties;
(4) the benefit conferred on members of the pension plan as a whole; and
(5) the relative merits of the parties' position.

*Ursic*, 719 F.2d at 673-74; *Fields v. Thompson Printing Co., Inc.*, 363 F.3d 259, 275 (3d Cir. 2004). *See also Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1011-12 (3d Cir. 1992) ("[W]e regard our requirement that district courts consider and analyze these factors as a mandatory requirement" and the district court must "articulate its considerations, its analysis, its reasons and conclusions touching on each of the five factors delineated in *Ursic*.")).

### A. Culpable or Bad Faith Conduct and the Relative Merits of the Parties' Positions

This Court considered jointly the first and fifth factors; *i.e.,* whether Christian's conduct involved culpability or bad faith, and the relative merits of the parties' positions. *See Monkelis*, 827 F.2d at 936 (considering the first and fifth *Ursic* factors together). The concept of bad faith does not require an "ulterior motive or sinister purpose" as a "losing party may be culpable [without] having acted with an ulterior motive." *McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc.*, 33 F.3d 253, 256 (3d Cir. 1994). In a civil context, culpability "is commonly understood to mean conduct that is 'blameable; censurable; … at fault;

8

involving the breach of a legal duty or the commission of a fault.... Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong.'" *McPherson*, 33 F.3d at 256-57 (quoting Black's Law Dictionary (6th ed. 1990)).[10] However, "a party is not culpable merely because it has taken a position that did not prevail in litigation." *Id.* at 257.

The relative merits of the parties' respective positions entails not whether, but how much, this factor weighs in favor of the prevailing party. *Glunt*, 2012 WL 895512, at *4 (citing *Addis v. Limited Long–Term Disability Program*, 2006 WL 2387087, at *3 (E.D. Pa. Aug. 3, 2006)).

Honeywell argues that the law governing the limitation and accrual of ERISA benefit claims is well-settled, and that Christian's act of filing the declaratory judgment action after the Plan Administrator's "admonition that her claim was time-barred" evidences her bad faith. Christian, on the other hand, does not dispute the law, only its application to her "very unique" circumstances, *i.e.*, one where she questions the authenticity of her signature on the Waiver, which was notarized by her husband's secretary in Pennsylvania when she was purportedly in Florida.

There is no dispute that Christian's cause of action accrued when her claim for benefits was formally denied. *See Romero v. The Allstate Corporation*, 404 F.3d 212, 222 (3d Cir. 2005). Claims accrue when there has been "a repudiation of the benefits by the fiduciary which was *clear* and made known to the beneficiary." *Romero*, 404 F.3d at 223 (citation omitted, emphasis in original); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-521 (3d Cir. 2007). This Court determined that upon Christian's husband's death and the cessation of benefits in July 2004, an unequivocal repudiation occurred, which triggered the commencement of the statute of

---

[10] "Culpability" in the latest edition of Black's Law Dictionary remains essentially the same, *i.e.*, "[b]lameworthiness; the quality of being culpable." Black's Law Dictionary (9th ed. 2009).

limitations. Christian should have then known of her injury and was required to make a timely claim challenging the cessation, and she did not. *See Keen v. Lockheed Martin Corp.,* 486 F. Supp. 2d 481, 488 (E.D. Pa. Apr. 30, 2007) ("[T]he clear repudiation rule preserves the core of the traditional discovery rule, namely, that it is a plaintiff's knowledge or *ability to know* of his or her injury that triggers the statute of limitations, not the plaintiff's knowledge that the injury violates his or her legal rights") (emphasis added) (citing *Romero*, 404 F.3d at 215) ("We … make explicit that the federal discovery rule should be used to determine the date of accrual of the non-fiduciary claims alleged here.")).

Christian argues that the question of whether her claim was timely was the subject of a reasonable dispute, thus, negating any culpability or bad faith conduct on her part. This Court is unpersuaded by this argument. The Plan Administrator carefully considered Christian's claims and provided her a detailed explanation why her claim lacked merit and was untimely. Christian's husband had elected and had been receiving $900 more in monthly benefits than they would have been entitled to receive had the Waiver not been submitted. While Christian denies signing the Waiver, she benefited for many years from the "error". Under the statute, Honeywell as the administrator of an ERISA plan "provide[d] a 'full and fair review' of [Christian's] claim denials." 29 U.S.C. § 1133(2); *Lucas v. Liberty Life Assur. Co. of Boston*, 2011 WL 6196720, at *1 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)). From this Court's review, Honeywell considered the pertinent information reasonably available and reached a decision supported by substantial evidence. *See McBride v. Hartford Life and Accident Ins. Co.*, 2007 U.S. Dist. LEXIS 16917, at *87 (E.D. Pa. Jan. 29, 2007) (quoting *Grossmuller v. Int'l Union, UAW, Local 813*, 715 F.2d 853, 857-58 (3d Cir. 1983)). By letter dated October 18, 2012, Honeywell notified Christian in writing of the specific reasons for denying the claim, the

10

evidence it relied upon, and provided an opportunity to submit written comments or rebuttal documentary evidence.[11] The letter further advised Christian that "the signature and date on the Waiver Form appear consistent with other documents signed by Mr. Christian during and after his employment. Similarly, there are four documents signed by [Christian] in the Plan's files, the earliest dated 1986 and the latest dated in 2004, and [her] signature and date appear consistent among all the documents. Further, it does not appear that the Waiver Form was tampered with in any way."[12] After Christian filed an administrative appeal and submitted documentation that purported to show that she was in Florida at the time the Waiver was signed and notarized, Honeywell affirmed its decision by letter dated January 22, 2013, with an explanation, *inter alia*, that the Waiver appeared valid on its face and that none of the documents submitted completely ruled out the possibility that Christian returned to Pennsylvania to sign it.[13]

Christian claimed that upon notice of cessation of benefits in 2004, she did not know, and had no reason to know, that she had a claim for survivor benefits from the Plan until eight years later, when she discovered the Waiver amongst her late husband's papers. This explanation was insufficient to toll the statute of limitations. In light of Honeywell's letter to Christian which clearly states the reasons why the claim lacked merit, this Court finds that Christian engaged in culpable conduct in pursuing the subsequent declaratory judgment action which had similar shortcomings. This finding weighs in favor of awarding attorneys' fees.

### B. *Christian's Ability to Satisfy an Award of Attorneys' Fees*

Regarding the second factor, Christian's ability to satisfy the award, Honeywell admits that it is a factor which may weigh against awarding attorneys' fees, since it has no first-hand knowledge of Christian's financial means. Christian divulges no information about her ability to

---

[11] *See* Compl. ¶ 31; Dooley Decl., ¶ 3, Jan. 6, 2014 [ECF 13-6].

[12] Dooley Decl., ¶ 3, Jan. 6, 2014 [ECF 13-6].

[13] January 22, 2013, Letter to Lynn Christian [ECF 13-8].

pay, providing only that she is a widow whose claim for survivor benefits has been denied. Absent any financial data, this Court concludes that this factor is neutral as it neither weighs in favor of nor against an award of attorneys' fees.

### C. The Deterrent Effect of an Award of Attorneys' Fees

The third factor requires courts to consider whether an award of attorneys' fees would serve the objectives of ERISA by dissuading similar conduct in the future and "the deterrent effect of an award of attorneys' fees against the offending parties." *McPherson*, 33 F.3d at 254. The Third Circuit has noted the deterrent value in ERISA cases even when the behavior falls "short of bad faith conduct." *See Glunt*, 2012 WL 895512, at *3 (quoting *McPherson,* 33 F.3d at 258 (internal quotation marks omitted)). Honeywell advocates that an award of attorneys' fees would deter future plaintiffs and counsel from filing stale and/or frivolous claims, without discouraging meritorious claims. Christian counters that there is nothing wrong with a plaintiff's efforts to vigorously advocate a position legally supported but unsuccessful. *Einhorn v. M.L. Ruberton Const. Co.*, 720 F. Supp. 2d 639, 643 (D. N.J. June 28, 2010). Given that this Court determined that Christian's claim was filed years beyond the applicable statute of limitations, there is no legal support to her claim. This Court concludes that this factor strongly weighs in favor of an award of attorneys' fees to effectively discourage plaintiffs and counsel from filing stale and/or frivolous claims.

### D. The Benefit Conferred on Members of the Pension Plan as a Whole

The Court must consider "the benefit, if any, which is conferred on others by the court's judgment." *Loving*, 11 F. Supp. 2d at 497 (quoting *McPherson,* 33 F.3d at 254). Honeywell posits that in deterring stale and/or frivolous claims, the Plan will not be required to expend unnecessary expenses in defending those types of claims, since expenses are paid from the Plan's assets, to the detriment of Plan participants and beneficiaries. Christian responded that since she

did not engage in culpable or bad faith conduct, Honeywell's argument fails. Christian is mistaken in suggesting that the first *Ursic* factor – the offending party's culpability and/or bad faith conduct – is a threshold determination for the rest of the factors. As stated, each factor must be examined and weighed independently.

Honeywell argues that the expenses incurred in defending this action have depleted the assets available to the Plan's beneficiaries since these were paid from the fund itself.[14] Logically, the less that is spent shielding the Plan against frivolous claims, the more assets are available to be conferred to the beneficiaries. Therefore, this factor favors awarding attorneys' fees.

In sum, weighing the above-cited *Ursic* factors and considering the arguments made, all but one factor weighs in favor of awarding attorneys' fees. This Court, therefore, finds that an award for attorneys' fees is warranted under §1132(g)(1).

### IV. Attorneys' Fees

As its final analysis, this Court must "review the attorneys' fees and costs requested and limit them to a reasonable amount". The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the court may reduce the award accordingly and exclude hours that are not reasonably expended, are excessive, redundant, or otherwise unnecessary. *McGuffey v. Brink's, Inc.*, 598 F. Supp. 2d 659, 670 (quoting *Pennsylvania Environmental Defense Foundation v.*

---

[14] *See* Covert Decl., ¶ 4 n. 1, Jan. 6, 2014 (invoices were sent to Honeywell International Inc., but payments have been made by the Plan).

*Canon-McMillan School Dist.*, 152 F.3d 228, 232 (3d Cir. 1998) (internal quotations omitted));
*see also Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

While blanket percentage reductions should not be ordered in a perfunctory fashion,
*Daggett v. Kimmelman*, 811 F.2d 793, 797 (3d Cir. 1987), and sufficient reasons for selecting a
particular percentage reduction must be given, *American Bd. of Internal Medicine*, 540 Fed.
Appx. at 108, reductions are permissible so long as the court "provide[s] a concise but clear
explanation of its reasons for the fee award." *Id.* (quoting *Hensley*, 461 U.S. at 437). The
determination of fees, however, "should not result in a second major litigation," *Hensley*, 461
U.S. at 437, and the fee applicant (whether a plaintiff or a defendant) must, of course, submit
appropriate documentation to meet "the burden of establishing entitlement to an award." *Id*. A
court may take into account its overall sense of a suit, and may use estimates in calculating and
allocating attorneys' time. *Fox*, 563 U.S. at __ , 131 S. Ct. at 2216. A court "need not, and indeed
should not, become a green-eyeshade accountant[ ]". *Id*. This approach stays true to the fact that
"[t]he essential goal in shifting fees ... is to do rough justice, not to achieve auditing perfection."
*Id.*

Honeywell presents documentation that supports legal fees and costs totaling $76,779.18.
*See* Mot., Exh. 1 [ECF 13-4]. Specifically, it included a *Declaration of Amy Covert*, an attorney
and member of the New York law firm Proskauer Rose LLP, who with the law firm of Marks &
Sokolov, represent Honeywell. Attorney Covert indicated that the bulk of the services rendered
was for the preparation and replies related to the motion to dismiss filed on behalf of Honeywell;
and that her hourly rate charged in this matter is $630.00 and her associate's hourly rate is
$355.50. She submitted a copy of the invoices for professional services rendered which totaled
over 153 hours covering a period of July 31, 2013, to December 10, 2013. Also submitted was a

14

*Declaration of Lisa Dooley*, Associate General Counsel for Benefits at Honeywell, confirming the invoices submitted. Despite the total cost of the professional services rendered, Honeywell seeks only $10,000, approximately 13% of the total amount requested, and accounts for the reduction, as follows:

- A threshold reduction for the time that the Plan determined is inappropriate for an award of fees on this motion (and which were, therefore, removed from the time detail provided);

- A 30% reduction in recognition of the lower hourly rates charged by attorneys in Philadelphia of roughly comparable experience for matters of this nature;

- Professional services billed through October 31, 2013, only, and not those rendered through December 31, 2013; and

- The anticipation of Christian's assertion that she has limited financial means.

The statutory purpose of ERISA is to protect pension benefits. *Loving*, 11 F. Supp. 2d at 498 (citing *Ellison*, 956 F.2d at 1277). Accordingly, the policy behind awarding attorneys' fees and costs pursuant to §1132(g)(1) is to uphold the general purpose of ERISA by protecting pension benefits. *Id.* Additionally, the discussion of the *Ursic* factors "adequately address[es] ERISA's policy concerns of remediation and deterrence." *See also Ellison*, 956 F.2d at 1274. An award of attorneys' fees pursuant to §1132(g)(1) is also intended to deter conduct that does not fulfill the purpose of ERISA. *Loving*, 11 F. Supp. 2d at 498.

Acknowledging Honeywell's drastic reduction in the amount of the professional fees and balancing that reduction with the case law discussed herein, as well as the fact that Christian's benefits ceased as of July 2004, this Court finds that an award of attorneys' fees and costs, as reduced by Honeywell to $10,000, fulfills the purpose of protecting pension benefits and deterring conduct which undermines the stated purposes. This finding takes into consideration what a reasonable fee would be based on the lodestar calculation, *i.e.*, the number of hours

expended on the litigation multiplied by a reasonable hourly rate. *Hahnemann University Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008) (citations omitted); *see also United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Center*, 501 F.3d 283, 290 (3d Cir. 2007).

## CONCLUSION

Since this Court has determined that Honeywell achieved "some success on the merits" by prevailing on its previous motion to dismiss and sufficient reason herein to award Honeywell attorneys' fees, the instant motion is granted in the amount of $10,000, the reduced requested amount. An appropriate order consistent with this memorandum opinion follows.

*Nitza I. Quiñones Alejandro, U.S.D.J.*